**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Curtis Bohnert,<br><br>        Plaintiff,<br><br>vs.<br><br>Jeffrey Mitchell; George A. Burke; Kevin Carr; Maricopa County; Maricopa County Sheriff Joe Arpaio; State of Arizona; Roger Vanderpool, Director of the Arizona Department of Public Safety,<br><br>        Defendants. | No. CV-08-2303-PHX-LOA<br><br>**ORDER** |

On September 21, 2010, the Court granted Maricopa County Deputy Sheriff George A. Burke's and Kevin Carr's Motion for Summary Judgment on Qualified Immunity,[1] doc. 75, and Department of Public Safety ("DPS") Officer Jeffrey Mitchell's Motion for Summary Judgment on qualified immunity, doc. 81. (Doc. 107); *Bohnert v.*

---

[1] The County Defendants' Motion for Summary Judgment raised no issue other than qualified immunity, Count II's claim of failure to train and supervise made against Sheriff Arpaio and Maricopa County, and Count VII's allegation of vicarious liability on the § 1983 claim. Their Motion concluded that if the Court determines that Deputies Burke and Carr are entitled to qualified immunity, then "Defendants Arpaio and Maricopa County are entitled to be dismissed[.]" (Doc. 75 at 13)  The County Defendants did not seek summary judgment on Count II's ADA  allegations and the State law allegations in Counts III through VI. Therefore, this order addresses all the claims made against the State Defendants and only the failure to train and supervise allegations in Count II and the vicarious liability allegation in Count VII against the County Defendants.

*Mitchell*, 2010 WL 3767566 (D.Ariz. 2010). The State Defendants' (collectively the State of Arizona, Officer Mitchell, and former DPS Director Roger Vanderpool) Motion for Summary Judgment also sought summary judgment on Plaintiff's Americans With Disabilities Act ("ADA") claim brought pursuant to § 1983 and all other theories of liability alleged against them. (Doc. 81) Plaintiff filed a timely response, doc. 96, to which the State Defendants replied, doc. 99. For the purpose of clarity, the September 21, 2010 summary judgment order addressed only the common issue of qualified immunity of Officer Mitchell and Deputies Burke and Carr. This order addresses the other issues raised by the State Defendants in their summary judgment motion.

Like the qualified immunity motions, because the briefing is adequate and oral argument would not aid the Court, the Court will deny Plaintiff's request for oral argument. *Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

**I. Allegations**

Count I of the Complaint alleges, *inter alia*, that Officer Mitchell, Deputies Burke and Carr "discriminate[d] against [P]laintiff who is an individual qualified for protection and relief, pursuant to 42 U.S.C. sect. 12132 (Title II of the [ADA]). Specifically, as a diabetic, [P]laintiff comes within the protection of said Act and is entitled to relief thereunder as he is a person who suffers from a physical or mental impairment that substantially limits one or more of his major life activities." (Doc. 1, ¶ 29 at 10) Count II alleges the State of Arizona, Director Roger Vanderpool, Sheriff Arpaio and Maricopa County "developed and maintained policies, customs and usages whereby they inadequately trained, supervised and investigated [Officer Mitchell and Deputies Burke and Carr] in their employ and under their administration or supervision . . . in the use of force against persons [.]" Thus, they are vicariously liable for the violations of Plaintiff's rights. (*Id.* at 11- 14) Counts III through VI of the Complaint allege Officer Mitchell and others committed four separate torts under Arizona law: negligence (Count III), infliction of emotional distress (Count IV), false arrest (Count V), and assault and battery (Count VI). (*Id.* at 14-17) Lastly, Count VII alleges that the State of Arizona is liable under the theory of *respondeat superior*

for the State law "tortious conduct" of Officer Mitchell. (*Id.* at 17-18)

**II. Background**

The facts are well known to the parties, have been detailed at length in the Court's September 21, 2010 order granting summary judgment on the basis of qualified immunity, and will be repeated here only as necessary to explain this decision.

Generally, this lawsuit arises out of Plaintiff's failure to cooperate with the arresting officers and his subsequent arrest accomplished by the use of reasonable and necessary force, including the use of a Taser in stun mode, on March 5, 2008 after Plaintiff was driving his vehicle the wrong way on Interstate 8 for approximately five miles near Gila Bend, Arizona. It is undisputed that at the time Plaintiff was driving his vehicle, he experienced an extreme hypoglycemic event (insulin shock due to extremely low blood sugar), causing Plaintiff to experience a "dream like" state of mind without the loss of his ability to operate a motor vehicle. Plaintiff sustained multiple and serious injuries during the course of his arrest.[2] *Bohnert*, 2010 WL 3767566.

Plaintiff has not presented any evidence, nor raised any reasonable inference from the evidence, that Officer Mitchell and the other arresting officers knew that Plaintiff was not under the influence of alcohol or drugs, legal or illegal, while Plaintiff was operating his vehicle westbound in the eastbound lanes of I-8 until after Plaintiff was arrested and secured on the ground.[3] At no time before he was placed in handcuffs and physical custody did Plaintiff inform the arresting officers that he was having a medical emergency or was a diabetic.[4] The parties agree that as Plaintiff was leaving Gila Bend on his way to make sales

---

[2] Plaintiff's Statement of Facts ("PSOF") at ¶¶ 83-85, doc. 84 at 17-18.

[3] Plaintiff does not dispute that, until this incident with Plaintiff, Officer Mitchell has never witnessed anyone experiencing a diabetic episode, impairment or reaction. State Defendants' Statement of Facts ("SDSOF"), doc. 82 at ¶ 31; PSOF, doc. 93 at ¶ 31.

[4] Deposition of Officer Mitchell, Exh B, p. 137-138, County Defendants' Statement of Facts ("CDSOF"), doc. 76-2 at 12-13; SDSOF at ¶ 29. Plaintiff does not dispute these facts. PSOF at ¶ 29.

- 3 -

calls to his customers in western Arizona,[5] Plaintiff, an insulin-dependent diabetic, suffered "severe hypoglycemia,"[6] also known as insulin shock,[7] from low blood sugar, resulting in confusion, disorientation[8] and almost a complete loss of memory.[9] Plaintiff has no memory of his physical struggle with the police officers.[10] Significantly, it was not until shortly after Plaintiff was handcuffed and placed in leg restraints that Plaintiff started saying, "[H]elp me, help me. Somebody help me."[11] Officer Mitchell called for an ambulance as soon as Deputy Burke placed the leg restraints on Plaintiff.[12]

Once Plaintiff was in custody, Officer Mitchell and Deputy Burke conversed and Officer Mitchell "wonder[ed] what [Plaintiff was] on."[13] Each of them realized that

---

[5] On March 5, 2008, Plaintiff, now aged 56, was a long-time employee of Southwest Rubber and Supply engaged in outside sales of rubber products to industrial users. SDSOF at ¶ 1; Complaint at ¶ 13, doc. 1.

[6] PSOF at ¶ 144.

[7] "Hypoglycemia means low blood sugar. It occurs when there is not enough sugar or glucose in the blood. It is also called insulin shock or insulin reaction. . . ." Univ. of Iowa website at http://www.uihealthcare.com/topics/diabetes/diab4396.html (September 7, 2010). Also see, PSOF at ¶ 113.

[8] According to Plaintiff, when he experiences a hypoglycemic episode, it comes on suddenly without warning. He described it as a "dreamlike" state. PSOF at ¶¶ 113, 116. Plaintiff's expert witness, Kevin P. Corley, M.D., avers that symptoms of a hypoglycemic episode "can include mental disorientation leading to incorrect choices when operating an automobile, alteration in behavior including oppositional behavior, alteration in speech pattern, and a refusal to cooperate with individuals when requested to do so." *Id.* at ¶ 143.

[9] Plaintiff concedes he has no memory of anything that occurred from the time that Officer Mitchell approached his vehicle until he was lying handcuffed and shackled on the pavement. PSOF at 45, doc. 93 at 6.

[10] *Id.*

[11] Exh B, deposition of Officer Mitchell, p. 54, lines 13-22, doc. 76-2 at 6.

[12] *Id.* at p. 54, lines 21-22.

[13] *Id.*, lines 13-17.

- 4 -

Plaintiff did not smell of alcohol or marijuana. At that moment, Officer Mitchell thought Plaintiff might be intoxicated on pills.[14] While waiting for the ambulance to arrive, Officer Mitchell conducted a partial search of the passenger compartment of Plaintiff's vehicle. He found a jacket on the front seat, and in patting it down he felt a small bag that seemed to contain pills. When Officer Mitchell pulled the bag out from the jacket pocket, he found that it was a packet of mini M&M candies. For the first time, Officer Mitchell thought Plaintiff might be diabetic. The thought occurred to Officer Mitchell because he has a diabetic relative who carries small quantities of candy with him to help maintain his blood sugar level.[15] At Officer Mitchell's request, either Deputy Burke or Deputy Carr searched Plaintiff's front pant's pocket and found "glucose tablets."[16]

When the ambulance arrived, Officer Mitchell informed the medical personnel that he suspected that Plaintiff was a diabetic and that they should check his blood sugar right away.[17] After testing his blood, the medical personnel advised Officer Mitchell that Plaintiff's blood sugar was low.[18] Plaintiff contends he had no indication or warning that he was becoming hypoglycemic when he was driving his vehicle on March 5, 2008.[19] In the past, when Plaintiff experienced an extreme hypoglycemic event (extremely low blood sugar) approximately ten times, it was only at night when he was asleep.[20] On March 5, 2008,

---

[14] SDSOF at ¶ 25. Plaintiff does not dispute this factual statement. PSOF, ¶ 25.

[15] SDSOF at ¶ 26. Plaintiff does not dispute this factual statement. PSOF at ¶ 26, doc. 93 at 4.

[16] SDSOF at ¶ 27, doc. 82 at 7. Plaintiff does not dispute this factual statement. PSOF at ¶ 27, doc. 93 at 4. Deputy Carr testified, however, that he found the glucose tablets. PSOF at ¶ 128.

[17] PSOF at ¶ 89, Exh 2, Mitchell deposition, p. 55, lines 15-17.

[18] *Id*. at ¶ 90.

[19] *Id*. at ¶ 40.

[20] *Id*. at ¶¶ 36-37.

Plaintiff did not wear a diabetic identification bracelet but he did carry a card in his wallet which identified him as a diabetic.[21]

### III. Legal standard

The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Under Rule 56, summary judgment is properly granted when: (1) no genuine issues of material fact remain; and (2) after viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, a district court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

### IV. An ADA claim via § 1983

The State Defendants contend that the Complaint "asserts a § 1983 claim based on the alleged violations of the [ADA]." (Doc. 81 at 7) Plaintiff disagrees and argues that "Plaintiff's Complaint does not rely on 42 U.S.C. § 1983 in support of his ADA claim." (Doc. 96 at 21) Plaintiff explains that his civil rights and ADA claims against the State of Arizona, DPS Director Roger Vanderpool, the Maricopa County Sheriff's Office and Sheriff Joe Arpaio are found at Count II of the Complaint. (*Id.*) Because neither the Complaint nor

---

[21] PSOF at ¶¶ 49-50; SDSOF at ¶ 30.

- 6 -

Count II is a model of Rule 8(a) clarity, the Court will separately address both ADA issues, *viz.*, one arguably brought pursuant to § 1983 and a stand-alone claim brought under Title II of the ADA.

The State Defendants contend that "[t]he federal courts have held that a § 1983 action will not lie to vindicate statutory rights in regard to which Congress has already provided a comprehensive remedial scheme." (*Id.* at 7) "In *Vinson v. Thomas*, 288 F.3d 1145, 1155-56 (9th Cir. 2002), [*cert. denied*, *Hawaii v. Vinson*, 537 U.S. 1104 (2003)], the Ninth Circuit held that the ADA itself incorporates a scheme for enforcement, and the Act cannot therefore provide the basis for a § 1983 claim." (*Id.*) The *Vinson* court stated:

> Section 1983 does not confer rights, but instead allows individuals to enforce rights contained in the United States Constitution and defined by federal law. *See Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995). An alleged violation of federal law may not be vindicated under § 1983, however, where: "(1) the statute does not create an enforceable right, privilege, or immunity, or (2) Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme." *Buckley*, 66 F.3d at 190 (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)). "[A] comprehensive remedial scheme for the enforcement of a statutory right creates a presumption that Congress intended to foreclose resort to more general remedial schemes to vindicate that right." *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999) (citing *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)).

288 F.3d at 1155.

Following the lead of three other circuits, the Ninth Circuit in *Vinson* concluded "that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his] individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act. Vinson's claim against Thomas in her individual capacity under 42 U.S.C. § 1983 fails." *Id.* at 1156 (footnote omitted). Thus, if Plaintiff has attempted to allege an ADA claim pursuant to 42 U.S.C. § 1983 against the State Defendants, it is not viable under controlling law. The Court will grant the State Defendants' Motion for Summary Judgment, doc. 81 at 7-8, in this regard because the ADA is a comprehensive remedial scheme for the prevention of disability discrimination and enforcement of disability

discrimination claims.

**V. Title II of the ADA**

In Counts I and II of the Complaint, Plaintiff asserts that the Defendants are liable for having discriminated against Plaintiff in violation of Title II of the ADA, citing various portions of the ADA, including 42 U.S.C. § 12132. (Doc. 1, ¶¶ 29-30 at 10; ¶¶ 36-38 at 12-14)

The ADA was passed "[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It prohibits discrimination against people with disabilities in the areas of "employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III. *Tennessee v. Lane*, 541 U.S. 509, 516-517 (2004); *Pruett v. State*, 606 F.Supp.2d 1065, 1072 (D.Ariz. 2009). Title II, the provision at issue in this case, provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Title 42 U.S.C. § 12132; *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

Under Title II, public entities include state and local governments and their departments, agencies, and instrumentalities. 42 U.S.C. § 12131(1)(A) & (B); *Thomas v. Nakatani*, 128 F.Supp.2d 684, 691 (D.Haw. 2000). Persons with disabilities are "qualified" individuals if they, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet[ ] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

To establish a violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise

discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Lovell*, 303 F.3d at 1052; *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). "The ADA must be construed broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *D.K. ex rel. G.M. v. Solano County Office of Educ.*, 667 F.Supp.2d 1184, 1190 (E.D.Cal. 2009) (citing *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002)).

### A. ADA liability for individuals

The State Defendants contend that "Title II prohibits *public entities* from discriminating against disabled individuals in connection with the services, programs or activities of the entity." (Doc. 81 at 10) (emphasis in original). Quoting *Miller v. King*, 384 F.3d 1248, 1277 (11th Cir. 2004), *vacated on other grounds*, 449 F.3d 1149 (11th Cir. 2006), the State Defendants contend "[t]he plain language of the statute applies only to public entities, and not to individuals." 384 F.3d at 1277. "While the Ninth Circuit has not addressed the issue, the Eighth Circuit has determined that a public actor may not be sued in his or her individual capacity under Title II of the ADA." *Thomas*, 128 F.Supp.2d at 691 (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8. (8th Cir.1999) (*en banc*), *cert. granted in part*, 528 U.S. 1146 (2000), *cert. dismissed*, 529 U.S. 1001 (2000)). Furthermore, the Second Circuit has determined that Title II does not provide for individual capacity suits against state officials. *Garcia v. S.U.N.Y. Health Sciences Center*, 280 F.3d 98, 107 (2d Cir. 2001).

Plaintiff's Complaint does not specify whether Roger Vanderpool was sued in his official or individual capacity. In a § 1983 action in the Ninth Circuit, "[w]here state officials are named in a complaint which seeks damages . . . it is presumed that the officials are being sued in their individual capacities." *Shoshone-Bannock Tribes v. Fish & Game Com'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994) (citations omitted). "Any other construction would be illogical where the complaint is silent as to capacity, since a claim for

damages against state officials in their official capacities is plainly barred."[22] (*Id*.) The Complaint does allege that Officer Mitchell was "sued in his individual capacity." (Doc. 1 at 2)  It is clear, however, that in the Ninth Circuit, there is no individual capacity liability under the ADA. *Vinson*, 288 F.3d at 1156; *U.S. ex rel. Teresa Teater v. Schrader*, 2006 WL 1030165, * 4 (D.Or. 2006); *Becker v. Oregon*, 170 F.Supp.2d 1061, 1067 (D.Or. 2001); *Van Hulle v. Pacific Telesis Corp*., 124 F.Supp.2d 642, 645 (N.D.Cal. 2000); *Thomas*, 128 F.Supp.2d at 691-92.

Assuming Director Vanderpool was sued in his individual capacity, the Court agrees with the State Defendants that "Officer Mitchell and Director Vanderpool cannot be held individually liable under the ADA, and Plaintiff Bohnert's claims against them personally cannot be sustained." (Doc. 81 at 10)  Officer Mitchell and Roger Vanderpool are entitled to summary judgment in their individual capacity.

### B. ADA vicarious liability of the State and Vanderpool

The State Defendants acknowledge that "[t]he Ninth Circuit has ruled that public entities can be held vicariously liable if their employees discriminate against disabled persons. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001)." (Doc. 81 at 10)  Under this section, the Court assumes that Plaintiff intended to sue Director Vanderpool in his official capacity.

"To recover monetary damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall* at 1138. In *Duvall*, the Ninth Circuit held that intentional discrimination can be shown by establishing "deliberate indifference" by the defendant. *Id.* The *Duvall* court further explained that "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon the likelihood." *Id.* As the Ninth Circuit subsequently stated in *Lovell*, "[t]he first element is satisfied when the public entity has

---

[22] It does not appear that the Ninth Circuit has addressed the issue where a complaint is silent as to capacity of a public official in an ADA case whether a presumption arises that the official is being sued in his individual or official capacity.

- 10 -

notice that an accommodation is required." *Lovell*, 303 F.3d at 1057. In other words, to establish a *prima facie* case under Title II of the ADA, the State Defendants' must have discriminated against Plaintiff because of Plaintiff's disability.[23] *Lovell*, 303 F.3d at 1052; *Weinreich*, 114 at 978. Thus, if the disabled person has a latent disability like diabetes or any other non-obvious disability, there can be no liability under the ADA without actual or constructive notice of such disability.[24]

The State Defendants argue that they are entitled to summary judgment on Plaintiff's ADA claim "because Officer Mitchell, at the time he used force against [Plaintiff] and restrained him, did not know that [Plaintiff] was diabetic." (Doc. 81 at 11, citing SDSOF, ¶¶ 25-31) Assuming without deciding that Plaintiff's diabetes is a disability within the

---

[23] In the context of a Title I claim against an employer, liability under the ADA also requires actual or constructive notice of the plaintiff's disability. *Morisky v. Broward County*, 80 F.3d 445, 447-49 (11th Cir. 1996) ("At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason.") (quoting *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 932 (7th Cir.1995)); *Crandall v. Paralyzed Veterans of America*, 146 F.3d 894, 895 (D.C.Cir. 1998) ("[n]o reasonable factfinder could have found that [the employer] discriminated on the basis of [the employee's] disability, since it had neither actual nor constructive notice of his disability when it fired him"); *Landefeld v. Marion General Hospital*, 994 F.2d 1178 (6th Cir. 1993) (Internists could not prove hospital suspended him because of his mental illness absent evidence that it knew of that illness); *Schmidt v. Safeway Inc.*, 864 F.Supp. 991, 997 (D.Or. 1994) ("[O]f course, the employee can't expect the employer to read his mind and know he secretly wanted a particular [ADA] accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. . . .").

[24] The State Defendants do not raise the issue whether an arrest falls within the ambit of Title II of the ADA. *Rosen v. Montgomery County, Maryland*, 121 F.3d 154, 157 (4th Cir. 1997) ("[C]alling a[n] . . . arrest a 'program or activity' of the County . . . strikes us as a stretch of the statutory language and of the underlying legislative intent."). The Ninth Circuit, however, has held that state parole proceedings, including substantive decision making, constitute an "activity of a public entity" that falls within the reach of the ADA. *Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002).

- 11 -

meaning of the ADA,[25] the State Defendants argue that "[i]t is impossible for Mitchell's conduct to have been motivated by [Plaintiff's] disability if Mitchell was unaware of the disability at the time. Because Mitchell did not know about [Plaintiff's] diabetes until after the fact, the State is entitled to summary judgment on Plaintiff's claim of Title II discrimination." (*Id.*)

Plaintiff's Response failed to address the State Defendants' legal argument that Title II requires actual or constructive notice of Plaintiff's disability before liability may be imposed under the ADA or the State Defendants' factual claim that Officer Mitchell was unaware of Plaintiff's disability until after Plaintiff was arrested in handcuffs and leg restraints. It is undisputed that it was not until Officer Mitchell pulled the M&M candy bag from Plaintiff's jacket pocket while Officer Mitchell was waiting for the ambulance to arrive, that Officer Mitchell first suspected that Plaintiff might be diabetic. Officer Mitchell's suspicion that Plaintiff might be diabetic was confirmed after the ambulance arrived, the medical personnel tested Plaintiff's blood sugar, and advised Officer Mitchell that Plaintiff's blood sugar was low.

Local Rule ("LRCiv") 7.2(c),(i) requires Plaintiff to file a responsive memorandum to the State of Arizona's dispositive motion claiming there is no ADA liability or "such non-compliance may be deemed a consent to the . . . granting of the motion and the Court may dispose of the motion summarily." LRCiv 7.2(I). More importantly, assuming that the ADA applies to an arrest, a legal analysis of the relevant ADA case law and the undisputed facts dictate that the State Defendants' summary judgment motion on Plaintiff's

---

[25] See, *Rohr v. Salt River Project Agricultural Imp. & Power District*, 555 F.3d 850, 858 (9th Cir. 2009) ("Diabetes is a 'physical impairment' because it affects the digestive, hemic and endocrine systems, and eating is a 'major life activity.' Whether Rohr's diabetes substantially limits his eating is an 'individualized inquiry.' [citation omitted] Once an impairment is found, the issue is whether Rohr's diabetes substantially limits his activity of eating. We find that the district court erred in concluding that it did not."); *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003).

- 12 -

ADA claim must be granted.[26]

## VI. § 1983 claims against Vanderpool, Arpaio and Maricopa County

Count II of the Complaint alleges Defendants Vanderpool, Arpaio and Maricopa County "developed and maintained policies, customs and usages whereby they inadequately trained, supervised and investigated those police officers in their employ and under their administration or supervision . . . in the use of force against persons . . . ." (Doc. 1 at 12) Plaintiff claims the inadequate supervision and training of Officer Mitchell renders Defendant Vanderpool liable due to his position as Director of DPS and Sheriff Arpaio and Maricopa County are responsible for Deputies Burke and Carr. (Doc. 1 at 12) These allegations are without merit.

As the Defendants indicate, there is no *respondeat superior* liability under section 1983. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (rejecting the concept of *respondeat superior* liability in the section 1983 context and requiring individual liability for the constitutional violation). (Docs. 81 at 9; doc. 75 at 12) "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation; there is no *respondeat superior* liability under section 1983." (Doc. 81 at 9); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (requiring personal participation in the alleged constitutional violations). In order to make out a § 1983 claim against a supervisor, a plaintiff must plead that the supervisor defendant, through his or her own individual actions, has violated the Constitution. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1948 (2009).

---

[26] Because the State Defendants did not raise the "exigent circumstances" exception to the ADA, the Court will not do so *sua sponte*. *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2010) ("[w]e hold that Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life."); *Waller ex rel. Estate of Hunt v. Danville, VA*, 556 F.3d 171 (4th Cir. 2009); *Bircoll v. Miami-Dade County*, 480 F.3d 1072 (11th Cir. 2007).

Because there was no violation of Plaintiff's constitutional rights, the claims of inadequate supervision and training of Officer Mitchell and Deputies Burke and Carr are baseless. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996). Defendants Vanderpool, Arpaio and Maricopa County are entitled to summary judgment on Count II's claims that they inadequately supervised and trained Officer Mitchell and Deputies Burke and Carr or they maintained a policy that resulted in the constitutional violation of other individuals' constitutional rights.

**VII. State law claims**

The Complaint claims that Officer Mitchell committed four separate torts under Arizona law: negligence, infliction of emotional distress, false arrest, and assault and battery, doc. 1, Counts III – VI, and the State is liable for these torts under the theory of *respondeat superior*. (*Id.*, Count VII) The Court has jurisdiction over these claims pursuant to its supplemental jurisdiction. 28 U.S.C. § 1367. The State Defendants seek summary judgment on each State law count. Again, Plaintiff failed to respond to the State Defendants' legal arguments on all four of Plaintiff's State law claims.

### A. Negligence

Count III of the Complaint contends that police officers, like Officer Mitchell, "[a]re charged with a duty to exercise reasonable care in their conduct, so as to avoid injury to members of the public[, that Officer Mitchell] act[ed] unreasonably in [his] dealings with plaintiff Curtis Bohnert[, and Officer Mitchell is] liable to plaintiff for those damages as described in this Count." (*Id.* at 14-15) Count III fails to specify any facts to demonstrate what Officer Mitchell did or failed to do that constitutes negligence under Arizona law.

The State Defendants' Motion on Plaintiff's negligence claim argues that if Officer Mitchell committed any torts at all, he committed intentional torts. (Doc. 81 at 11) They claim that "[i]f a plaintiff alleges that a police officer used excessive force while

1 accomplishing an arrest, the claim cannot properly be characterized as negligence; in actuality the plaintiff is claiming an intentional tort[,]" citing, *inter alia*, *Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1008-09 (E.D. Tex., 1997) ("Although Plaintiffs have attempted to bring a claim for 'negligence' arising from the alleged conduct of Officer Leger, Plaintiffs have described their claims arising from the shooting as the intentional tort of excessive force. Furthermore, regardless of the language used, it is clear that Plaintiffs' claims consist of intentional torts."). While Texas law may be illustrative, Arizona law, of course, controls Plaintiff's State law claims. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 904 (9th Cir. 1983) (district court exercising jurisdiction over a pendent state law claim is "bound to follow an interpretation of state law by the highest state court."); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 230 (Ariz. 2007) (citing *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (Ariz. 1983) ("[N]egligence requires proof of a duty owed to the plaintiff, a breach of that duty, an injury proximately caused by that breach, and damage.") "In Arizona, government entities and employees are generally subject to tort liability for their negligence, and immunity is the exception." *Greenwood v. State*, 217 Ariz. 438, 442, 175 P.3d 687, 691, (Ariz.Ct.App. 2008) (citing City of *Tucson v. Fahringer*, 164 Ariz. 599, 600, 795 P.2d 819, 820 (1990)). Summary judgment in negligence cases is proper only if the plaintiff "presents no evidence from which a reasonable jury could find, directly or by inference, that the probabilities" favor the plaintiff. *Estate of Aten v. City of Tucson*, 169 Ariz. 147, 817 P.2d 951 (1991) (quoting *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000, 1009 (1990)).

Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Citadel Holding*

- 15 -

*Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex*, 477 U.S. at 323. The party opposing summary judgment "may not rely merely on allegations . . . in its own pleading; rather, [his] response **must**--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2) (emphasis added); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed.R.Civ.P. 56(e)(2)

Plaintiff totally failed to address his negligence claim in his response and, thereby, failed to "set forth specific facts showing that there is a genuine issue for trial." Moreover, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001); *Albrechtsen v. Board of Regents of University of Wisconsin System*, 309 F.3d 433, 436 (7th Cir. 2002) ("'Judges are not like pigs, hunting for truffles in' the record.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). The Court will grant the State Defendants' Motion for Summary Judgment on Plaintiff's negligence claim.

### B. Negligent or intentional infliction of emotional distress

Count IV of the Complaint alleges that Officer Mitchell intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress to Plaintiff. (Doc. 1 at 15) As the State Defendants' Motion point out, Count IV is titled "Negligent Infliction of Emotional Distress," the allegations, however, spell out the elements of the tort recognized in Arizona as intentional infliction of emotional distress.[27]

---

[27] Under Arizona law, "[n]egligent infliction of emotional distress requires that the plaintiff witness an injury to a closely related person, suffer mental anguish that manifests itself as a physical injury, and be within the zone danger so as to be subject to an unreasonable risk of bodily harm created by the defendant." *Villareal v. State Dep't Of Transportation*, 160

- 16 -

(Doc. 81 at 12)

"A claim for intentional infliction of emotional distress, also called the Tort of Outrage, requires proof of three elements: first, the conduct of the defendant must be extreme and outrageous; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct." *St. George v. Home Depot U.S.A., Inc.,* 2007 WL 604925 (D.Ariz. 2007) (quoting *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 516, 115 P.3d 107, 110 (Ariz. 2005)) (internal quotation marks omitted); *Craig v. M & O Agencies, Inc*., 496 F.3d 1047, 1058 (9th Cir. 2007) (citing *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 428, 909 P.2d 486, 495 (Az.Ct.App. 1995)). As the State Defendants demonstrate, "a plaintiff must establish that the defendant's acts were 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community[,]'" quoting *Mintz v. Bell Atlantic Systems*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (Az.Ct.App. 1995); Restatement (Second) of Torts § 46 comment d. (Doc. 81 at 13)   "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd*., 149 Ariz. 76, 79, 716 P.2d 1013, 1016 (Ariz. 1986).

The State Defendants move for summary judgment on the basis that "Officer Mitchell's actions in the present case obviously do not come anywhere near the threshold requirement of conduct that is 'atrocious and utterly intolerable in a civilized community.'"

---

Ariz. 474, 481, 774 P.2d 213, 220 (Ariz. 1989) (citing *Keck v. Jackson*, 122 Ariz. 114, 115-16, 593 P.2d 668, 669-70 (Ariz. 1979). Plaintiff did not witness an injury to a closely related person during his March 5, 2008 arrest. He alleges only that he himself sustained physical injuries during his arrest by Officer Mitchell. Therefore, the State Defendants are entitled to summary judgment if Plaintiff intended to allege a claim of negligent infliction of emotional distress.

- 17 -

(Doc. 81 at 13) Officer "Mitchell's conduct in dealing with Plaintiff Bohnert was objectively reasonable under the circumstances, and well within constitutional bounds. Summary judgment should be entered in favor of the State Defendants on Count IV." (*Id.*)  Plaintiff also does not address this part of the State Defendants' Motion.

Having satisfied their burden of producing evidence that negates an essential element of the claim, the State Defendants are entitled to summary judgment unless Plaintiff demonstrated that a genuine issue of material fact exists on this State law claim. Rule 56(e), Fed.R.Civ.P. Plaintiff has failed to do so. Independent of the absence of a Plaintiff's response, the Court cannot conclude that there is a question of fact on Plaintiff's claim for intentional infliction of emotional distress. The Court has previously found that Officer Mitchell did not use unreasonable or excessive force in arresting Plaintiff and the amount of force that was used was necessary as a result of Plaintiff's own conduct, beginning with his refusal to comply with Officer Mitchell's orders to exit the vehicle. *Bohnert*, 2010 WL 3767566. It is not, most certainly, "extreme and outrageous" conduct for police officers to use reasonable, but not more than necessary, physical force to arrest a person who actively resists his arrest, especially if the police officers have no actual or constructive knowledge such person is having a medical emergency. *Id.* Summary judgment is appropriate on Plaintiff's State law claim of intentional infliction of emotional distress.

### C. False arrest

To establish a claim of false arrest in Arizona, a plaintiff must show that he was detained "without his consent and without lawful authority." *Slade v. City of Phoenix*, 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975) (citing *Swetnam v. F.W. Woolworth Co.*, 83 Ariz. 189, 318 P.2d 364 (1957); *Mohajerin v. Pinal County*, 2007 WL 4358254, * 4 (D.Ariz. 2007). "The essential element necessary to constitute either false arrest or false imprisonment is unlawful detention." *Slade*, 112 Ariz. at 300, 541 P.2d at 552. "Under Arizona law, probable cause is an absolute defense to a claim of false arrest and imprisonment." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (citing *Hockett v. City of Tucson*, 139 Ariz. 317, 320, 678 P.2d 502, 505 (Az.Ct.App. 1983); *Joseph v. Dillard's, Inc*., 2009 WL

5185393, * 15 (D.Ariz. 2009)). "Under Arizona law, probable cause is an absolute defense to a claim of false arrest and imprisonment." *Hockett*, 139 Ariz. 317, 320, 678 P.2d 502, 505

Having previously found that Officer Mitchell had probable cause to arrest Plaintiff, *Bohnert*, 2010 WL 3767566 at 7-10, the Court will grant the State Defendants' Motion for Summary Judgment on Plaintiff's State law false arrest claim.

### D. Assault and battery

To establish the tort of assault in Arizona, Plaintiff must prove that Officer Mitchell acted with intent to cause a harmful or offensive contact or imminent apprehension thereof. *Joseph v. Dillard's, Inc.*, 2009 WL 5185393 at * 15 (citing *Garcia v. United States*, 826 F.2d 806, 809 n. 9 (9th Cir. 1987) and Restatement (Second) of Torts § 21 (1965)). Similarly, to establish the tort of battery, Plaintiff must show that Officer Mitchell "intentionally caused a harmful or offensive contact" with Plaintiff's person. *Id.* (citing *Johnson v. Pankratz*, 196 Ariz. 621, 623, 2 P.3d 1266, 1268 (Az.Ct.App. 2000) (citing Restatement (Second) of Torts § 13 (1965)). "Contact is offensive if it 'offends a reasonable sense of personal dignity.' Restatement (Second) of Torts § 19 (1965)." *Id.*

Plaintiff has produced no evidence of Officer Mitchell's intent to cause harm or imminent apprehension thereof to Plaintiff. Under the circumstances, and drawing all inferences in Plaintiff's favor, the Court concludes that Officer Mitchell's use of physical force was reasonably necessary for the same reasons discussed above in connection with Plaintiff's excessive force claim under the Fourth Amendment. Because Plaintiff failed to respond to the State Defendants' Motion in this regard and the absence of any evidence, or reasonable inference from the evidence, that Officer Mitchell intended to use any more force than was reasonable and necessary to overcome Plaintiff's physical resistence to arrest, the State Defendants' Motion will be granted.

Accordingly,

**IT IS ORDERED** that the State of Arizona's, Officer Mitchell's, and Roger Vanderpool's Motion for Summary Judgment, doc. 81, is **GRANTED** as follows:

1. on Plaintiff's ADA claim brought pursuant to 42 U.S.C. § 1983,

2. on Plaintiff's Title II ADA claim of disability discrimination,

3. on Plaintiff's claims of negligence, intentional infliction of emotional distress, false arrest, assault and battery alleged in Counts III through VI, respectively,

4. on Plaintiff's claim in Count II that Roger Vanderpool inadequately supervised and trained Officer Mitchell or that he maintained a policy that resulted in the constitutional violation of other individuals' constitutional rights,

5. on Plaintiff's claim in Count II that they are vicariously liable on Plaintiff's § 1983 claim.

6. the State of Arizona is not liable on Plaintiff's State law claims of negligence, intentional infliction of emotional distress, false arrest, assault and battery alleged in Counts III through VI, respectively, under the theory of *respondeat superior* as alleged in Count VII.

The Clerk is directed to terminate Defendants State of Arizona, Officer Jeffrey Mitchell, and Roger Vanderpool from this lawsuit.

**IT IS FURTHER ORDERED** that Sheriff Arpaio's and Maricopa County's Motion for Summary Judgment, doc. 75, is **GRANTED** in part as follows:

1. on Plaintiff's claim in Count II that they inadequately supervised and trained Deputies Burke and Carr or they maintained a policy that resulted in the constitutional violation of other individuals' constitutional rights, and

2. on Plaintiff's claim in Count II that they are vicariously liable on Plaintiff's § 1983 claim.

**IT IS FURTHER ORDERED** that Plaintiff's request for oral argument, doc. 96, is **DENIED** as unnecessary.

Dated this 26th day of October, 2010.

Lawrence O. Anderson
United States Magistrate Judge

- 20 -